UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                       **DECISION AND ORDER**
        v.                             25-CR-114-A

LUIS MERCADO a/k/a Yvng Fabii,

                      Defendant.

## I.   <u>BACKGROUND</u>

Defendant is charged in a two-count indictment with illegal possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and with possession of a firearm with a removed, altered, or obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B).  Dkt. 6.[1]  On June 26, 2025, this Court referred this case to United States Magistrate Judge H. Kenneth Schroeder, Jr., pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).  Dkt 8. Pending before this Court are Defendant's objections (Dkt. 28) to Judge Schroeder's Report, Recommendation, and Order ("RR&O")(Dkt. 27), which recommends denying Defendant's motion to suppress a firearm, ammunition, and certain statements made by Defendant, which were obtained during an encounter that Defendant had with law enforcement officers who were working security at a college basketball game that Defendant attended as a

---

[1] References herein, unless otherwise indicated, are to items set forth on the docket in the above-captioned case.

spectator. Dkt. 17, pp. 3-5. In his motion, Defendant argues that he was unlawfully seized by the officers, as they lacked reasonable suspicion. *Id*., p. 7.

The facts relied upon by Defendant in his suppression motion as well as the facts considered by Judge Schroeder in issuing his RR&O denying Defendant's motion were developed at an evidentiary hearing that was conducted in New York State Court, on October 3, 2024.[2]  The parties agreed that a further evidentiary hearing was not required. Dkt. 27, p. 2.

Following oral argument, Judge Schroeder on November 6, 2025, filed an RR&O recommending that Defendant's suppression motion be denied. Dkt. 27. Defendant timely filed objections (Dkt. 28) and the government responded. Dkt. 30.[3] For the reasons which follow, Defendant's objections to the RR&O as well as his motion to suppress are **DENIED**, and this Court adopts Judge Shroeder's RR&O.

## II.    <u>FACTS</u>

The Court adopts the facts as found by Judge Shroeder in his RR&O.  Dkt. 27, pp. 2-4.  Briefly, those facts established that charges against Defendant arose as the result of an incident which occurred on February 9, 2024, at the State University at New York, Buffalo State ("Buffalo State"), during which law enforcement officers

---

[2] As part of his suppression motion, Defendant included the transcript of the October 3, 2024, suppression hearing testimony of Deputy Sheriff Olszewski, of the Cattaraugus County Sheriff's Office, before the Honorable Sheila DiTullio, Erie County Court Judge. Dkt. 17-3, pp. 1-42.

[3] While this Court issued a text order setting a deadline of December 22, 2025, for the Defendant to reply to the Government's response to his Objections, *see*, Dkt. 29, Defendant did not file a reply.

responded to an altercation during a men's college basketball game. At a previous Buffalo State men's basketball game, there had been a large brawl, and as a result, there was an increased number of security officers present at the game on February 9, 2024.  One of the individuals working security at the game was Anthony Olszewski, an off-duty Deputy Sheriff with the Cattaraugus County Sheriff's Office. During the game, Olszewski observed the Defendant—and others with Defendant—behaving strangely.  When a fight broke area in a vestibule outside the arena, Olszewski responded and observed two individuals, David Pena-Batista and Angel Quinones, to be actively fighting while others, while others, including Defendant, were also present and appeared to be involved.  When the two individuals who were fighting refused his command to stop, Olszewski used pepper spray to break-up the fight and eventually detained Batista. After handing Batista off to another officer who was present, Olszewski returned to look for the others, including Defendant.

Olszewski saw that Defendant and others had returned to the area in which they had previously been sitting, although now they were "spread out."  Olszewski found the manner in which they were seated to be strange, as it appeared they were "attempt[ing] to disguise that they were…a group and they were all involved in this altercation."   As the officers attempted to identify the parties involved in the altercation, Defendant alighted in a strange manner. As Olszewski described it, Defendant "got up, immediately put his hands in his front pockets; he had like a pop of some sort in his hands, and with both hands, you know, put his hands in his front of his pockets near his waistband where his pockets were."  Olszewski ran in pursuit

3

of Defendant.  With Olszewski chasing Defendant, another officer, Lieutenant Helling, apprehended Defendant, and as Olszewski approached Helling and Defendant, Defendant stated, "I got the thing on me."  Olszewski responded, "What?" Defendant stated, "I got the joint on me," and put his hands-up and looked right down at his waistband.  At that point , Olszewski, suspected Defendant to be armed, and a loaded Glock 19 nine-millimeter pistol was discovered in Defendant's waistband. The firearm was not in "stock" condition—it featured a machinegun conversion device, a select-fire switch, and an extended ammunition magazine, and its serial number was defaced.

## III.    DISCUSSION

A district court reviews any specific objections to a report and recommendation on a dispositive issue, such as a motion to suppress, under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *see*, *United States v. Stearns*, 556 F. Supp. 3d 208, 210 (W.D.N.Y. 2021).  This Court has, pursuant to 28 U.S.C. § 636(b)(1)(B), made a *de novo* determination of the Magistrate Judge's RR&O. The Court has also reviewed the submissions of the parties, and upon *de novo* review, the Court adopts the proposed findings for the reasons stated in Judge Schroeder's RR&O.

Briefly, the Court observes that Defendant's suppression motion hinges completely on whether the initial seizure of Defendant was lawful, since immediately

4

upon being seized by the officers, Defendant, without being frisked or questioned, put up his hands and told Officer Olszewski that he had a weapon on him.  As such, his spontaneous and voluntary post-seizure statements are admissible because they were made in the absence of police questioning or any other conduct by the police officers "reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *United States v. Gelzer*, 50 F.3d 1133, 1138 (2d Cir. 1995); *United States v. Colon*, 835 F.2d 27, 30 (2d Cir. 1987).  Further, Defendant's spontaneous statements, at a minimum, justified the decision to perform the subsequent frisk/pat-down which disclosed the firearm that Defendant possessed. *See*, *United States v. Padilla*, 548 F.3d 179, 189 (2d Cir. 2008)(pat-down during *Terry*-stop justified where officers have reason to believe that a suspect is armed and dangerous).

Turning to the propriety of the Defendant's seizure, the Court observes that the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  As pertinent here, a seizure requires "either physical force ... or, where that is absent, submission to the assertion of authority." *United States v. Swindle*, 407 F.3d 562, 572 (2d Cir. 2005) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).  Further, as the text of the Fourth Amendment makes clear, the "ultimate measure of the constitutionality" of any governmental search or seizure is "reasonableness." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995); *United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014)("[T]he ultimate measure of

the constitutionality of a government search or seizure is reasonableness, a matter generally determined by balancing the particular need to search or seize against the privacy interests invaded by such action." (internal quotation marks and citations omitted)).

As explained by the Supreme Court, an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop—a so-called *Terry*-stop—"when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Reasonable suspicion to conduct a *Terry*-stop exists when a law enforcement officer can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *United States v. Bell*, 733 F. App'x 20, 21 (2d Cir. 2018) (quoting *Terry*, 392 U.S. at 21 (alteration omitted)). In determining whether an officer had reasonable suspicion for a *Terry*-stop, the Court "must consider the totality of the circumstances surrounding the stop" and "evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) (internal citations and quotation marks omitted).

Although "an inchoate and unparticularized suspicion or hunch" cannot support reasonable suspicion, *United States v. Padilla*, 548 F.3d at 187, a law enforcement officer is permitted to "draw on his own experience and specialized training to make inferences from and deductions about the cumulative information

available to him that might well elude an untrained person." *Id.* (internal quotation marks and alterations omitted). "[C]ontextual considerations" factor into a reasonable-suspicion analysis, and the officers' assessment of a person's "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v. *Wardlow*, 528 U.S. at 124.  Moreover, "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."  *Id*.

Here, this Court concludes that Judge Schroeder correctly determined that law enforcement's seizure of Defendant was justified as a lawful *Terry*-stop supported by reasonable and articulable suspicion that criminal activity was afoot. The testimony presented at the suppression hearing established the following facts which, considered in totality, gave rise to a reasonable suspicion, at the time that Defendant was stopped,[4] that that criminal activity was afoot and that Defendant was involved in such activity.

Specifically, Deputy Olszewski knew: (1) that there had been a large brawl at a prior Buffalo State Men's Basketball game, which prompted a larger police presence than usual at the February 9, 2024, game, *see*, Dkt. 17-3, pp. 4-5; (2) that

---

[4] As noted, the actual stop of Defendant was effectuated by Lieutenant Helling, one of the other officers who was present and working with Deputy Olszewski that night. Dkt. 17-3, p. 17.  At the time he was stopped by Lieutenant Helling, Defendant was being chased and followed closely by Deputy Olszewski. *Id*. Under the collective knowledge doctrine, an investigatory stop is permissible when the officer lacks specific information required for reasonable suspicion, but sufficient information is known by other officers initiating or involved with the stop. *See United States v. Hussain*, 835 F.3d 307, 316 n.8 (2d Cir. 2016); *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001).

Defendant, and another individual subsequently identified as Quinones, together with a group of five or six others, left the basketball game in a hurry only quickly to reenter the arena, *id.*, pp. 8-10; (3) that when Defendant and the group he was with reentered the arena, they did not respond at all to Deputy Olszewski's inquiry whether "everything [was] good," and instead walked past him, *id.*, p. 9; (4) that after Defendant and his group had already once left the arena in a hurry, Deputy Olszewski observed the group again rapidly leave the arena for a second time, *id.*, pp. 10-11; (5) that upon following Defendant and his group out of the arena a second time, Deputy Olszewski observed Defendant involved in a fight occurring between Quinones and an individual subsequently identified as Pena-Batista, *id.*, pp. 6-7; 11-13; (6) that after observing the brawl and pepper spraying Pena-Batista, *id.*, pp. 12-13, Deputy Olszewski's noticed that Defendant and his group had returned to the arena for a second time, but that they had now spread themselves apart in the bleachers, which Deputy Olszewski believed to be an effort to avoid detection, *id.*, pp. 13-14; (7) that when Deputy Olszewski at this point, ordered Defendant and the group to leave the arena, they again did so in a hurry, *id.*, pp. 14-15; (8) that while Defendant was leaving the arena, Deputy Olszewski observed Defendant walking in what he believed was a strange manner—by placing both of his hands in his front pockets near his waistband despite also holding a beverage in his hands, *id.*; (9) that when Deputy Olszewski's asked the group to stop so that he could further investigate the fight he had observed, Defendant fled, *id.*, p. 25, and with Olszewski in pursuit, another law enforcement officer stopped Defendant, and once stopped, Defendant put his hands up and immediately disclosed to the Olszewski that he had

a gun, *id.*, pp. 17; Dkt. 17-2, p. 3.  At that point, a loaded Glock 19 with a "switch" and an extended magazine was recovered by from Defendant's front waistband. *Id*.

In view of these facts considered in totality, the Court agrees with Judge Schroeder's conclusion that the *Terry*-stop of Defendant was lawful as it was based upon the officer's reasonable suspicion that "that criminal activity was occurring or was about to occur, *i.e.*, the brawling between and by a number of individuals, including the defendant," and that further investigation of Defendant was justified. Dkt. 27, p. 14.  With Defendant being lawfully stopped, neither his voluntary statement disclosing to the officers his possession of a firearm nor the seizure of such firearm and ammunition by the officers are subject to suppression.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's objections to the RR&O (Dkt. 28) are **DENIED**, Defendant's motion to suppress (Dkt. 17) is **DENIED**, and Judge Schroeder's RR&O (Dkt. 27) is adopted in its entirety. The parties are directed to appear before this Court on **Wednesday, January 21, 2026, at 9:30 A.M.** to set a date for trial.

**IT IS SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: January 14, 2026
     Buffalo, New York